JAMES KEELEY *et al.* v. T. S. RILEY *et al.*, *Executors*

(No. 8227)

Submitted November 20, 1935. Decided December 3, 1935.

KENNA, JUDGE, dissenting.

*James B. Riley* and *Robert J. Riley*, for plaintiffs in error.
*J. M. Ritz* and *F. A. McMahon*, for defendants in error.

678

MAXWELL, JUDGE:

This case involves the claim of James Keeley and Katherine Keeley, his wife, for $25,000.00 against the estate of James L. Hawley, deceased. The claim was allowed by the commissioner of accounts to whom the settlement of the estate of said decedent had been referred by the county court of Ohio County. The commissioner's finding was successively affirmed by both the county court and circuit court of said county. This writ of error was awarded to the judgment of the circuit court.

The basis of the claim is an alleged oral contract between the Keeleys and James L. Hawley under the terms whereof Hawley, in consideration of services rendered and to be rendered to him by the Keeleys, agreed to bequeath to them the sum of $25,000.00. Hawley died testate November 13, 1930, without having made testamentary or other provision for the Keeleys.

From the report of the commissioner of accounts, who is an experienced member of the Ohio County Bar, we take the following excerpts: "Your Commissioner further finds that James Keeley and Katherine Keeley had been in the personal service of Mr. James L. Hawley for a number of years; that Mrs. Keeley, on or about the .. ..day of April, 1928, told Mr. Hawley that she was going to leave his service and that Mr. Hawley stated that he did not want her to leave his service, and that he could not get along without the services of Mr. and Mrs. Keeley, and if Mr. Keeley would stay with him and take care of him until he died, he would leave him Twenty-five Thousand Dollars in his will. The Keeleys then agreed with Mr. Hawley that they would not leave Mr. Hawley, but would stay with him and take care of him until he died; in fact they did stay with Mr. Hawley and did take care of him until his death. Mr. Hawley was about eighty-eight years of age at the time of his death, a bachelor living alone, and for many years previous to his death, spent many evenings at the Keeley home or the Keeleys spent many evenings with Mr. Hawley in his rooms.

"Mr. Hawley frequently stated that the Keeleys were the only family he had. At the time Mr. Hawley made this con-

tract with Mr. and Mrs. Keeley he was afflicted physically and was very sensitive about his condition. Because of his condition his food had to be prepared specially; Mrs. Keeley knew this and prepared all of his food in this special manner so that he was satisfied with it.

"Mr. Hawley was a wealthy man; he had no near relatives in the State and at the time of his last illness, with the exception of the physician and a professional nurse, the Keeleys were the only people that were with him and administered to him until the time of his death. The Keeleys were poor people and Mr. Hawley frequently stated that the compensation he was paying them was meager. Mr. Hawley also frequently admitted that the Keeleys were entitled to a substantial legacy and that he was going to provide for them. * * *

"Your Commissioner further finds that from all of the facts and circumstances that the amount of Twenty-five Thousand Dollars is not an unreasonable or excessive provision, and no creditor, devisee, legatee or next of kin would be unjustly or improperly affected by the allowance of this claim; that under all the facts and circumstances of the case your Commissioner finds that the contract alleged by the claimants has been fully and clearly proven, and has been performed by the Keeleys and that Mr. Hawley did not make any provision in his will for the Keeleys and that the Keeleys are entitled to the payment of their claim in the amount of Twenty-five Thousand Dollars ($25,000.00) with interest thereon from November 13, 1931, at the rate of 6% per annum."

In addition to the said finding of facts, it is to be noted that in August, 1927, Mr. Hawley prepared in his own handwriting but did not execute a contemplated codicil to his will as follows: "August 9th 1927   Codicil Number One added this Ninth day of August 1927 to my last will and testament ...........................I give and bequeath to my honest and faithful *emploees* James Keeley twenty five............thousand ($25000) dollars if he be living at the time of my death Say he is not living at the time of my death then I leave twenty five ($25000) dollars to his wife Katherine Keeley if she be living at the time of my death ......."

On behalf of the Keeleys, it is testified that the above mentioned verbal contract was made between the testator and the claimants in the month of April, 1928. It is vigorously urged by the defendants, for reasons which they point out, that the contract could not have been made at that time with the attendant circumstances narrated by the claimants. The answer to that proposition is that the date is not material. The essential inquiry is whether the contract was in fact made. On evidence amply sufficient to sustain him, the commissioner has found that such contract was made.

Margaret McNamara, daughter of the Keeleys, and Edwin Keeley, their son, testified in support of the claimants' contention in respect of the verbal agreement. Mrs. McNamara says she heard the conversation. Edwin says that Mr. Hawley told him about it the evening of the same day in the presence of other members of the Keeley family. Apropos of this situation, the circuit court, in written opinion, stated: "If this court were deciding the matter as now heard de novo, the point that would carry most conviction in regard to the stories of these two witnesses would be the general atmosphere of the case. So far from being the kind of contract James L. Hawley would not have made, this seems, under the evidence, to be the exact kind of contract which he would have made. Mr. Hawley had no real relatives living in the same city. He was generally friendly with his relatives but they were not near him. He depended more on Mr. and Mrs. Keeley for personal services about his home and, for that matter, for companionship, than on anyone else. So far from being improbable, the contract is decidedly probable."

Where there is substantial evidence to support findings of fact, and they are not at variance with the preponderance of the whole evidence, they will not be disturbed by an appellate court on review. *Adkins* v. *Perry*, 114 W. Va. 829, 174 S. E. 377; *Harwood* v. *Harwood*, 112 W. Va. 344, 164 S. E. 290.

We affirm the judgment of the trial court.

*Affirmed.*

Kenna, Judge, dissenting:

If the claim of James Keeley and Katherine Keeley against

the estate of James L. Hawley were a claim seeking compensation in money for services rendered the testator in his lifetime, based upon either express or implied contract, I would, in accordance with the views expressed by me in the additional memorandum filed in the case of *Garden et al.* v. *T. S. Riley et al., Executors,* 116 W. Va. 723, 183 S. E. 46, be of the opinion that the commissioner of accounts had jurisdiction of the claim. That, however, is not the nature of their claim. They say that on or about the........day of April, 1928, they being then in the employ of James L. Hawley and receiving compensation that was to continue, James L. Hawley promised them that he would "put a provision in his will" bequeathing them $25,000.00 if they would continue in his employ and take care of him as long as he lived. They say they fully performed the contract on their part and that the testator died, leaving a will that contained no provision for them.

Certainly, if James L. Hawley had fully performed the contract on his part and had made in his will the provision contended for, that fact would not have made the claim under the provision of the will a *debt* against the estate nor would it have put the Keeleys in the class of creditors of the estate. They would have been legatees, and the payment of their claim would have had to await the payment of the debts of the estate. Both the claim filed and the proof taken show that the contract Mr. Hawley made with them in his lifetime contemplated that he was to make them legatees in his will to the extent of a $25,000.00 bequest. The fact that in this instance the classification becomes immaterial owing to the undoubted sufficiency of the estate to pay all of the testator's debts and to meet all of the provisions of his will, the controverted bequest included, of course, makes no difference.

Here was a contract, based upon a consideration sufficient to sustain it, not for the payment of money, but to make the claimants a bequest of money. There would have been a literal compliance on the part of James L. Hawley if he had included the provision in his will, even though thereafter he had died with barely enough property to pay his debts, and these claimants had realized nothing. Still, James L. Hawley would have been doing exactly as he contracted to do, and so

long as he did it in good faith, the fact that the claimants realized nothing from the legacy would be of no legal consequence.

In so far as the nature of the claim is concerned, I do not believe that the foregoing comment can be questioned. What then is the proper remedy? A suit may be brought in assumpsit *for the breach of a contract* to make a will. *Jefferson* v. *Simpson,* 83 W. Va. 274, 98 S. E. 212. This, of course, is for a recovery sounding in damages, and, under the case last cited, the soundness of which in this respect may be open to question on the basis of the majority opinion, the measure of damages is the sum stipulated in the contract. A judgment in such an action would serve only to ''liquidate'' the claim and would give claimant no preference to which his contract did not entitle him. See discussion and citations in *Drainer* v. *Travis,* 116 W. Va. 390, 180 S. E. 435. Another remedy for failure to perform a contract to make a will, in instances such as that before us in this case, would be a proceeding in equity, perhaps not technically for specific performance, but for relief tantamount to specific performance. *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992, 81 A. S. R. 741. The two remedies that I have mentioned are the only ones that I know of which afford relief under our law in a situation of this sort. It seems perfectly clear to my mind that a commissioner of accounts is not, under Chapter 44, Code, clothed with authority to entertain either actions sounding in damages or matters calling for equitable relief. I am of the opinion, therefore, that this claim should not have been entertained by the commissioner of accounts because of lack of jurisdiction to pass upon it.

For the purpose of having a fund set apart out of the estate to meet the claim, if and when it should be properly adjudicated, the claimants could have gone before the commissioner under Code, 44-2-8, and upon sufficient showing to demonstrate the bona fides of the claim, protected their interests.

Owing to the fact that the conclusion I have reached is dependent upon several different provisions of Chapter 44, Code, it is extremely difficult to find cases in point. However, the case of *Oles* v. *Wilson,* 57 Colo. 246, 141 Pac. 489, contains

a full discussion of the principles involved under Colorado statutes which are apparently very similar to our own. More or less relevant holdings are to be found also in *Oles* v. *Macky's Estate,* 58 Colo. 295, 144 Pac. 891; *In re Williams' Estate,* 106 Mich. 490, 64 N. W. 490, and *In re Elvira E. Markley's Estate,* 10 Pa. Co. Ct. Rep. 551.

For the reasons stated, I am of the opinion that the commissioner of accounts had no jurisdiction to entertain the claim in question here, and to that extent, I respectfully disagree with the majority opinion. I have heretofore filed a memorandum in *Garden et al.* v. *Riley et al. Executors,* (decided December 10, 1935), having to do with another claim against this same estate in the same proceeding before the commissioner of accounts. In that memorandum, I referred more in detail to the statutes concerning claims of which commissioners of accounts have jurisdiction.